## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

JASON MANUEL  REEVES                    CASE NO. 2:19-CV-00925

VERSUS                                  JUDGE JAMES D. CAIN, JR.

DARREL VANNOY                           MAGISTRATE JUDGE KAY

### OPPOSITION TO PETITIONER'S
### MOTION TO STAY AND ABEY FEDERAL PROCEEDINGS

NOW  INTO COURT  comes  the  respondent,  through  the  undersigned  Assistant District Attorney, who  in opposition  to petitioner's  motion  to stay  and  abey  federal proceedings in the above captioned case respectfully responds as follows:

Petitioner entered the federal court system in this matter on July 17, 2019, when he filed a Motion to Stay Execution.  Doc. No. 1.  Thereafter, he filed a Petition for Writ of Habeas Corpus on September 9, 2019.  Doc. No. 13.  After dealing with various issues related to the filing of the state court record and court closures related to hurricanes, petitioner filed a Motion to Stay and Abey Federal Proceedings on December 21, 2020, over a year and a half after his first filing.  By this motion petitioner seeks to stay this proceeding and hold it in abeyance pursuant to *Rhines v. Weber,* 544 U.S. 269 (2005), so that he may return to state court to present an unexhausted claim  that the State's allegedly failed to disclose exculpatory evidence violating *Brady v. Maryland,* 373 U.S. 83 (1963).  Memorandum in Support of Motion to Stay and Abey Federal Proceedings. Doc. 36-8, p. 1.  He notes throughout his memo in support that the instant claim is unexhausted.  Doc. 36-8 pp. 7, 9, 10.  The State's opposition is currently due on March 31, 2021.

At the filing of the instant response by the State on March 31, 2021, there is no claim pending in state or federal court related to the alleged *Brady* claim which petitioner asserts that he wishes to bring.  This is important in at least two respects.  First, petitioner is seeking a stay in federal court on the basis of a non-existent claim.  Second, as it relates to the instant federal habeas petition, this non-existent claim cannot form the basis of a mixed petition which is the foundational requirement for a Stay and Abey Proceeding under the jurisprudence.

Further, and perhaps most devasting to petitioner's request, is that the allegedly undisclosed evidence was actually disclosed and utilized by the defense through the testimony of a the Director and Technical Leader of the North Louisiana Crime Lab at Shreveport.

## REQUIREMENTS FOR STAY AND ABEYANCE

In *Rhines v. Weber,*  544 U.S. 269, 277, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005), the Supreme Court noted that it was considering the following question:

> We confront here the problem of a "mixed" petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not. More precisely, we consider whether a federal district court has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition.[1]

The Court noted that the federal habeas petition in *Rhines* contained thirty-five claims of constitutional defects in his conviction and sentence.  The State challenged twelve of those claims as unexhausted.  The federal district court determined that eight of the claims were, in fact, unexhausted.  The district court stayed the federal proceedings to allow exhaustion of the unexhausted claims in state court.  The state appealed to the Eighth Circuit which reversed the

---

[1] *Rhines*, 544 U.S. 269, 271-272.

district court ruling.  The Supreme Court of the United States granted certiorari to resolve a conflict in the circuit courts regarding the stay and abeyance procedure.

Most instructive in *Rhines* is the Court's discussion of the total exhaustion requirements of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), in light of the adoption of the Antiterrorism and Effective Death Penalty Act.  Specifically, the Court noted:

> Moreover, Congress enacted AEDPA against the backdrop of *Lundy's* total exhaustion requirement. The tolling provision in § 2244(d)(2) "balances the interests served by the exhaustion requirement and the limitation period" "by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued." *Duncan, supra,* at 179, 121 S.Ct. 2120. AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a "properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). This scheme reinforces the importance of *Lundy's* "simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." 455 U.S., at 520, 102 S.Ct. 1198.

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

With these concerns in mind, the Court reasoned that stay and abeyance should be available only in limited circumstances, because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts.  Thus, the Court noted that stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

In the instant case, petitioner's request to stay and abey fails to satisfy the condition stated in *Rhines*, namely that he has a mixed petition.  Further, petitioner has failed to show that he meets

3

the requirements of *Rhines*, namely, (1) "good cause" for his failure to raise this claim in state court prior to the federal habeas application  (2) his unexhausted claim is "plainly meritless" and (3) the instant procedure is dilatory in nature.

## THE INSTANT PETITION IS NOT MIXED

 In the instant case, petitioner has filed a federal habeas claim alleging certain claims.  At this time there has been no determination whether the pending claims are exhausted or not.  But, in any event, petitioner now seeks a stay so that the can return to state court to litigate one or more new claims.  He freely admits in his motion that any new claim would be unexhausted.  The claim(s) which petitioner now seeks to bring in state court, and to presumably attempt to add to his federal petition at some point, relates to evidence that was not introduced at trial.  It should be viewed as no more than an attempt to piecemeal federal habeas litigation, which is disallowed under the AEDPA.

Since petitioner's alleged new claim was not raised in his federal petition, nor by any attempt to amend his petition to add that claim, the State contends that the instant petition is not mixed and *Rhines* does not apply.  A clear reading of *Rhines* precludes such a result.  In fact, there would be nothing to hold in abeyance if the petition were totally exhausted.  The whole purpose in staying a federal habeas case is to allow the exhaustion of the non-exhausted state claims.  In the instant case, the State asserts that the instant claim(s) is not a part of petitioner's pending federal habeas action.

## PETITIONER HAS NOT SHOWN "GOOD CAUSE" FOR FAILING TO RAISE HIS NEW CLAIM IN STATE COURT PRIOR TO FILING HIS HABEAS CLAIM

In his Motion, petitioner asserts that the State allegedly withheld evidence from him that was allegedly only recently discovered by habeas counsel.  Specifically, petitioner refers to DNA

analysis that was performed on paper tissues and matted leaves that were found at either the residence where the abduction occurred or the graveyard where the murder occurred. Petitioner's assertions are based on many assumptions, including the assumption that the DNA present on the tissue and leaves must have belonged to the murderer. That is simply untrue and speculative at best. The place where the body was found in this case was trafficked by many people and there is any number of physical objects that may have been found in the graveyard that had nothing to do with the instant murder. Likewise, MJT lived in a trailer park and many objects from the neighborhood were submitted for testing. By testing the tissues and matted leaves, among other items, prior to petitioner's second trial, the State was seeking cumulative evidence that would place petitioner at the scene or to properly document where the crime occurred within the confines of the graveyard and trailer park. There is nothing to suggest as alleged by counsel that the instant third party DNA evidence reveals the "true killer".

Second, petitioner refers to evidence that was found in the desk of a former employee of the District Attorney's Office. The evidence found in the desk was obviously not utilized at trial. Evidence that was utilized at trial would have been handled by the police and the experts and ultimately admitted into evidence and maintained by the Clerk of Court. Thus, the evidence in the district attorney's investigator's desk after the completion of the trial could hardly be characterized as critical. In his motion petitioner asserts without any basis or foundation that this is "critical forensic evidence".

What petitioner fails to assert is whether post conviction counsel or even trial counsel had knowledge of this evidence. Petitioner merely assumes and asserts that this evidence is *Brady* evidence without context. Likewise there is no mention of post conviction counsel's efforts to

5

locate evidence such as this during the post conviction phase of the proceedings.  Absent a showing that this evidence was in fact hidden and never disclosed, petitioner cannot establish good cause.

In any event, petitioner has totally failed to assert any reason for his late awareness of this evidence and why it was not discovered by post conviction counsel.  The *Rhines* requirement of good cause requires more than a statement that the evidence is "new" to federal habeas counsel.

In point of fact, the evidence in question was discussed at petitioner's trial.  The defense called a witness out of order (during the State's presentation) and discussed this precise evidence.  Pat Wojtkiewic, the Director and Technical Leader of the North Louisiana Crime Lab, testified on behalf of the defense as an expert in the field of DNA analysis.  State Court Rec. Vol. 42, p. 10156, et seq.  (See Attached).  He identified the alleged *Brady* evidence referenced in petitioner's motion and testified that the DNA profile on neither the tissue or the leaves matched either petitioner or the victim in this case.  Further, and perhaps most importantly as it relates to the alleged *Brady* issue, Mr. Wojtkiewic indicated on the record at trial that the DNA results would be put into CODIS.  The following colloquy occurred on defense questioning of the witness with counsel apparently reading from the report:

> **Q** And on the last page, the third paragraph from the bottom, your understanding is that the DNA profiles generated for Items 4AT1 and 6T1, the two you just mentioned, have been entered into the combined DNA index system known as CODIS, correct?
>
> **A** That's correct.
>
>  State Court Rec. Vol. 42, p. 10161, Ln 13-18.

Thus, trial counsel knew not only of the fact that the DNA on items 4 and 6 (the tissue and matted leaves) did not match either the victim or the petitioner, but some third party.  But trial counsel also knew that the results were placed in CODIS and may return a hit at any time.  Likewise, post conviction counsel and habeas counsel should have seen the same in the trial court record.

Defense counsel and the State stipulated that Deputy Jim Lohnes would testify that the "matted leaves" were found near the victim's body if called to testify. State Court Rec. Vol. 42, p. 103. Immediately after the stipulation, the defense rested. Defense counsel also noted these points in his closing arguments. State Court Rec. Vol. 42, p. 10397.

So the defense was plainly aware of and made use of this evidence at trial. The only unanswered question was to whom the DNA might belong. And even on this point the defense was aware that a CODIS entry had been made and might return a result at any time. So here, post conviction counsel and habeas counsel should have been aware of the existence of the 2004 crime lab report and that a hit may develop one day. However, what cannot and should not be said is that the State suppressed this evidence or that the defense was deprived of any exculpatory benefit it might provide.

Petitioner asserts throughout his memorandum that he can establish good cause based on newly discovered evidence and the State's suppression of the same. Petitioner alleged that the "State failed to disclose the evidence discussed above to defense counsel during any of the state court proceedings. It was only discovered by federal habeas counsel in 2020. Mr. Reeves was therefore unable to raise this claim in his initial state application filed in 2013." R. Doc. 36-8, p. 7. However, it is undeniable based on the state court record that trial counsel knew of the lack of a DNA match and the fact that the referenced piece of evidence matched an unknown third party. They presented this evidence to the jury and argued it as well. The fact that the unknown third party was identified after trial is of no moment and does not constitute a *Brady* violation. More to the point here, it also provides no basis for petitioner to argue good cause for his post conviction counsel's failure to pursue something that was clearly in the trial court record. For these reason, petitioner has failed to establish good cause for a stay and abeyance.

7

**PETITIONER'S NEW CLAIM IS "PLAINLY MERITLESS"**

In his motion to stay, petitioner argues that his *Brady* is not plainly meritless.  He makes no argument regarding the claim related to the evidence found in the investigator's desk, so that issue should be considered meritless.

In the Louisiana Supreme Court decision denying post conviction relief, the court noted the factual case against petitioner as follows:

In 2004, a Calcasieu Parish jury found relator, Jason M. Reeves, guilty of the first degree murder of four-year-old M.J.T.  At trial, the state presented evidence that Reeves abducted, raped, and murdered M.J.T. on the afternoon of November 12, 2001. The state's evidence linking Reeves to the murder included semen matching Reeves's DNA profile recovered from M.J.T.'s anus, fibers and dog hairs linking the victim's clothing to Reeves's vehicle, man-trailing dog evidence which tracked Reeves's scent to critical areas associated with the crime, witness statements placing Reeves and his vehicle at the trailer park from which M.J.T. was abducted and the cemetery near which her body was found, and a confession.

*State v. Reeves*, 2018-0270 (La. 10/15/18), 254 So.3d 665, 669.  Likewise, further in the opinion discussing alleged ineffectiveness of counsel and prejudice to petitioner, the court noted:

The man-trailing dog evidence was hardly the lynchpin of the state's case, considering that the state also presented DNA evidence, fiber evidence, eyewitness identifications, and a confession. Even were this piece of the state's case to fall, there appears no reasonable probability of a different result in light of the substantial evidence of Reeves's guilt. This claim lacks merit.

*State v. Reeves*, 2018-0270 (La. 10/15/18), 254 So.3d 665, 672.

As to the alleged *Brady* claim, petitioner fails to explain where the tissue was located in relation to the victim.  Petitioner's exhibit 1 appears to be dated 8/26/08 and to reference items 4 (tissues found at MJT's house with suspected blood on them) and item 6 (back yard of MJT residence and blood believed to be perp).  This appears to be notes taken by a laboratory technician who was not directly involved in the case and could not testify as to where the items were found or their significance to the crime scene.  Exhibit 2 was 5/4/04 and lists certain items of evidence submitted for testing including Item 4 (three pieces of white tissue paper) and Item 6 (matted leaves). On page 2 of the exhibit, the analyst noted that the DNA on one of the tissues and on the

matted leaves was inconsistent with MJT or petitioner.   Finally, exhibit 4 appears to be a match to one of the listed items, but it is unclear which one.

The presence of someone else's DNA either at the scene of the abduction or at the scene where the body of the four-year-old who was brutally raped and murdered was found hardly establishes that someone other than petitioner committed the instant crime.  As noted previously, the evidence introduced in the instant case was varied and corroborated by many sources.  The State maintains that in light of such evidence, even if the instant evidence was considered to be *Brady* evidence, then it is surely not material.  The material evidence in the instant case relates to what happened after MJT was abducted.  All of the trial evidence established by DNA, fiber, dog trailing, eyewitness and confession that petitioner brutally raped and murdered MJT and left her body at the graveyard, regardless who else may have been at or near the scene of her abduction or the graveyard.  Thus, petitioner's *Brady* claim is plainly meritless.

Petitioner asserts that his claim is potentially meritorious because all three elements of a *Brady* violation were allegedly present, i.e., "the CODIS hit and other suppressed evidence was favorable to Mr. Reeves; the State suppressed the evidence; and the suppression prejudiced Mr. Reeves."   R. Doc. 36-8, p. 7.  The State contends each of these assertions is plainly incorrect.  First, the State disclosed all available *Brady* evidence prior to trial.  The only evidence not disclosed, apparently, was the CODIS hit that occurred post trial.   As noted above, this evidence was disclosed and utilized at trial for its full evidentiary value, i.e., that someone other than petitioner was found to have left DNA at or near the scene of the body.  The jury heard and rejected that testimony.  Further, the trial court record is clear that the information had been entered into CODIS.  Therefore, the defense was on notice that a result may be found one day.  The failure of the State to subsequently provide the name of the person matching the unknown DNA after the

9

trial was no longer material.  Second, the State did not suppress any evidence as demonstrated. The State stipulated to what the Deputy would say and stipulated to the qualifications of the state crime lab expert who testified on behalf of the defense.  Finally, this alleged suppression did not prejudice petitioner.  Trial counsel knew about the results, except for the name of the third party, and made use of this testimony at trial.  Thus, petitioner suffered no material prejudice under *Brady*.

Petitioner's *Brady* claim is plainly meritless.  Further, petitioner made no argument with regard to the evidence found in the investigator's desk, so that claim must also be considered meritless.  Thus, petitioner has failed to meet this prong of the *Rhines* analysis.

**PETITIONER IS ENGAGING IN DILATORY TACTICS**

The instant motion, seeking to return to state court to potentially litigate a claim that may or may not be procedurally barred in state court, was filed more than a year after the filing of his federal habeas corpus application in 2019.  Three months have passed since the filing of the motion and no claim has been filed in state court to this date.  Nothing prevented petitioner from filing his claim in state court before he filed his motion in federal court. Thus, it can be argued that petitioner is not pursuing this matter as diligently as he could.

Additionally, it is likely that petitioner's foray into state court will be futile.  He application for post conviction relief may face procedural bars as well as the arguments raised herein.  Since it is apparent that the State disclosed all of the information they had prior to trial and the defense utilized that evidence at trial, petitioner's alleged *Brady* claim will fail on the merits in state court, if it survives the procedural challenges.  Thus, this is nothing more than a dilatory tactic.

Whether or not this court agrees to the stay and abey procedure, petitioner alleges that he has a valid state court claim.  If so, he should file and litigate it rather than drawing out the federal

proceedings while failing to advance the state proceedings. If this court refuses the stay, petitioner can still bring his state court claim. If this court grants the stay, petitioner will postpone the resolution of his federal claims for however long the state court proceedings take.

WHEREFORE, the undersigned prays that this Court deny petitioner's motion to stay and abey federal proceedings be denied.


**RESPECTFULLY SUBMITTED,**
STEPHEN C. DWIGHT
DISTRICT ATTORNEY


*DALE R. LEE*
DALE R. LEE
ASSISTANT DISTRICT ATTORNEY
LA. BAR ROLL NO. 20919