UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

JASON MANUEL REEVES                    CASE NO.  2:19-CV-00925 SEC P

VERSUS                                 JUDGE JAMES D. CAIN, JR.

DARREL VANNOY                          MAGISTRATE JUDGE KAY

MEMORANDUM ORDER

Before the court is a Motion to Stay and Abey Federal Proceedings [doc. 36] filed

by petitioner Jason Manuel Reeves. Respondent Darrel Vannoy opposes the motion. Doc.

50. The matter has been fully briefed and the court now issues this ruling.

I.
BACKGROUND

Petitioner is before this court with a petition filed pursuant to 28 U.S.C. § 2254,

seeking federal habeas relief from his 2004 conviction of first degree murder and resulting

death sentence. The conviction arose from the 2001 kidnapping, rape, and murder of four-

year-old M.J.T. in Calcasieu Parish, Louisiana. *See State v. Reeves*, 11 So.3d 1031 (La.

2009). Petitioner's conviction followed a second trial after a mistrial in 2003 over a hung

jury at the culpability phase. *Id.* After exhausting his state court remedies through a direct

appeal and application for post-conviction relief, petitioner received a stay of execution

and filed his habeas petition in this court in 2019. He now seeks a stay of his federal

proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005),  in order to return to state court

and exhaust remedies there relating to a claim not raised in his prior proceedings. Doc. 36.

-1-

The respondent opposes the motion on the grounds that the new claim is meritless and dilatory, and that the petitioner had notice of the basic underlying facts during his trial. Doc. 50.

## II.
### LEGAL STANDARD

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides that federal habeas relief may not be granted unless a petitioner has exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A). In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that the district court has discretion to stay a habeas petition in order to allow a petitioner to return to state court and pursue an unexhausted claim. Because it "effectively excuses a petitioner's failure to present his claims first to the state courts," stay and abeyance should only be granted when the district court determines that there is (1) good cause for the failure to exhaust and (2) that the unexhausted claims are not plainly meritless. *Id.* at 277. The Court likewise cautioned, however, that the district court would abuse its discretion if it refused to entertain such a petition where the above criteria were met and there was no indication that the petitioner had engaged in dilatory litigation tactics. *Id.* at 278.

## III.
### APPLICATION

Here petitioner argues that he is entitled to a stay and abeyance under *Rhines* because he has discovered new evidence of a *Brady* violation, which he now wishes to raise as a claim for habeas relief after exhausting his remedies in the state courts. Doc. 36. "To establish a *Brady* violation, a defendant must show: (1) the evidence at issue was

-2-

favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (citations omitted). Petitioner may raise this claim through a second application for post-conviction relief in the state court, but the court will dismiss the application if it finds that the claim was "inexcusably omitted" from the first attempt at post-conviction relief. La. C. Cr. P. art. 930.4(E). There is no time limit for applications for post-conviction relief filed by prisoners under a sentence of death. *Id.* at art. 930.8(A)(4).

Petitioner shows that the state submitted additional evidence from the crime scene, including blood-stained tissues, to the Northwest Louisiana Crime Laboratory ("NLCL") for DNA analysis in May 2004, prior to his second trial. Doc. 36, atts. 1 & 2. According to an employee of the Calcasieu Parish District Attorney's Office who spoke with the NLCL in 2008, the tissues were recovered from inside the porch of the victim's home and she believed the blood belonged to the perpetrator. Doc. 36, att. 1. The NLCL report from May 2004 reflects that the sample did not match the petitioner or the victim. Doc. 36, att. 2. Accordingly, the NLCL entered the DNA profile developed from the sample into the Combined DNA Index System ("CODIS"), a national database run by the FBI that contains the DNA profiles of thousands of convicted felons and can generate automatic matches. Doc. 36, att. 8, p. 3. In August 2005, the state CODIS administrator sent a letter to the

NLCL reporting a match to another Louisiana offender – according to petitioner, a Lake Charles man previously convicted of obscenity.[1] Doc. 36, atts. 3 & 4.

Petitioner also calls into question the state's handling of other potentially exculpatory forensic evidence, based on an unsealed envelope of serology samples from this case found in the desk of a former DA's Office investigator in 2019. *See* doc. 36, att. 7; doc. 37. The envelope was marked "Keep Frozen Until Final Disposition of Case." Doc. 36, att. 7. Petitioner states—and respondent does not dispute—that the evidence relating to the CODIS hit on the tissue and the improperly stored samples were not made available to him until 2020, after he had concluded his state court proceedings and filed his federal habeas petition. Doc. 36, att. 8, p. 7.

The respondent argues that there is no basis for a stay under *Rhines*, because any *Brady* claim is plainly meritless and dilatory. He notes that the petitioner had notice in 2004 of the lack of a match to the bloody tissue and submission of that sample to CODIS, and that he used these facts in argument at trial. *See* doc. 50, att. 1 (trial transcript excerpt). Respondent also argues that good cause does not exist because petitioner fails to show that the evidence was hidden or withheld during his state court proceedings. Doc. 50, pp. 5–6. Finally, the respondent asserts that the samples discovered in 2019 are of no moment because that evidence was not used at petitioner's trial.

As petitioner notes, the Louisiana Supreme Court and multiple federal courts have observed that a prosecutor's obligation to disclose potentially exculpatory evidence does

---

[1] Information relating to this person's identity has been redacted from petitioner's exhibits, but the respondent does not contest the characterization.

not end with the jury's verdict. *State v. Pierre*, 125 So.3d 403, 410 (La. 2013) (after a conviction, a "prosecutor . . . is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction"); *see, e.g.*, *Smith v. Roberts*, 115 F.3d 818, 819–20 (10th Cir. 1997); *Monroe v. Butler*, 690 F. Supp. 521, 522–23, 525–26 (E.D. La.), *aff'd*, 883 F.2d 331 (5th Cir. 1988). The CODIS hit arose at the latest in August 2005, less than one year after sentencing, when petitioner could still have filed a motion for a new trial based on newly discovered evidence. *See* La. C. Cr. P. art. 853. The respondent argues that the CODIS hit was not material, because numerous items from the victim's neighborhood were sampled and there is nothing to suggest that the bloody tissue was left by the killer. But the respondent learned of this person's identity over fifteen years ago and offers nothing to rule out his involvement in the matter or explain his presence on the porch of the victim's home. Petitioner has also asserted—and respondent does not dispute—that post-conviction counsel made public records requests to the district attorney's office during those proceedings, and that none of the information attached in support of this motion was produced. Doc. 56, pp. 7–8. Respondent fails to identify how the petitioner has delayed since learning of the CODIS hit. Finally, the potential mishandling of evidence by employees of the district attorney's office does not fit within the contours of the above-described *Brady* claim. Still, it is another area in need of factual development and petitioner should have the opportunity to conduct adequate investigation of any other claims relating to this newly discovered information.

The petitioner need only show this court that his claim is not "plainly meritless" in order to warrant consideration for a stay under *Rhines*. He has done so by demonstrating the ways in which the new information about the sample increases its materiality yet was not disclosed to the defense at a time when it might have been put to use. He has also shown that good cause exists for the failure to exhaust because respondent does not dispute that these materials were first turned over to the petitioner after the conclusion of his state court proceedings, despite records requests made during those proceedings. Based on these findings, the court discerns no dilatory litigation tactics.

There are still several unanswered questions relating to the potential merits of petitioner's claim and the circumstances of its discovery. However, the petitioner has an avenue for presenting his unexhausted claim to the state court, where it will face greater scrutiny—especially if that court decides to proceed to the merits. Accordingly, this court leaves further factual development to the petitioner's requested second application for post-conviction relief.

Finally, the respondent argues that a stay should not be granted because the petitioner has not yet raised his unexhausted claim in this proceeding. Accordingly, this petition is not a "mixed" one currently containing exhausted and unexhausted claims, as concerned the Court in *Rhines*, and the district court may adjudicate the exhausted claims while petitioner concurrently pursues his unexhausted claim in the state court. As petitioner notes, however, district courts have grated stays under *Rhines* in scenarios like this one— including in two other recent death penalty habeas cases in this court. *See, e.g.*, *Grace v. Cain*, 2015 WL 160369, at *19 (E.D. La. Jan. 3, 2015); *see also Tyler v. Vannoy*, No. 5:16-

cv-1059, docs. 66 & 67 (W.D. La. May 8, 2019); *Ford v. Cain*, No. 5:12-cv-0350, docs. 56 & 61 (W.D. La. Dec. 5, 2013). The interest of judicial economy is better served by resolving all of petitioner's potential habeas claims at once, rather than potentially allowing the case to develop along two divergent tracks with two separate briefing schedules in the event the *Brady* claim is exhausted and returns to this court. Accordingly, the stay will be granted under *Rhines* while petitioner returns to state court to pursue a second application for post-conviction relief.

## IV.
### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Motion to Stay [doc. 36] be **GRANTED** and that this matter be stayed pending further order of the court. **IT IS FURTHER ORDERED** that petitioner file an application for post-conviction relief in the state court in the next **90 days**, raising any claims relating to the recent disclosure, and notify this court within **14 days** of the state court's final disposition of the matter.

**THUS DONE AND SIGNED** in Chambers on this 28th day of April, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

-7-